# CHARLESTON.

CLARKSBURG ELECTRIC LIGHT CO. v. CITY OF CLARKSBURG *et al.*

Submitted January 30, 1900—Decided April 7, 1900.

1. STREET RAILROADS—*Exclusive Franchise.*

   The council of the town of Clarksburg in 1887 had no power, either under its charter or under the general statute law governing towns and cities, to grant an exclusive franchise for 20 years to a private corporation to use its streets for the conveyance of electricity for public use in the city. Such exclusive grant does not prevent the town from granting to another corporation, within said term, the privilege to occu-

py its streets for the same purpose. Such exclusive grant, being void, is not a valid contract protected by the provisions in the federal or state constitutions forbidding the passage of any law impairing the obligation of contracts. (p. 735).

2. Power to Grant—*Validity—Constitutional Law.*
Under the general statute law of West Virginia governing cities and towns, a grant by a municipal corporation of the privilege, not exclusive, of occupying its streets for the conveyance of electricity for public use therein, confers a valid franchise, and is a contract protected by the provisions in state and federal constitutions prohibiting the passage of any law impairing the obligations of contracts. (The question of the reasonableness of the term of such grant not considered. (p. 736).

3. Construction of Statute—*Rule—Federal Courts.*
The decision of the highest court of a state in the construction of its statutes, and as to the validity or invalidity of contracts dependent only on such statutes, is the controlling rule of decision in federal courts, where there is no federal question. (p. 737).

4. Grant by City—*Validity—Corporation.*
The grant by a city or town to an intended corporation of a franchise to use its streets for the conveyance of electricity for public use in the town or city is valid, though at its date the corporation is not chartered, but is later chartered, and accepts the grant. (p. 742).

Appeal from Circuit Court, Harrison County.

Action by the Clarksburg Electric Light Company against the city of Clarksburg and others. Decree for defendants and plaintiff appeals.

*Affirmed.*

John Bassell, Edwin Maxwell and C. W. Lynch, for appellant.

M. F. Snider and Davis & Davis. for appellees.

Brannon, Judge:

On the 16th of December, 1887, the council of the town of Clarksburg passed an ordinance granting to the Clarksburg Electric Light Company the exclusive privilege for the term of twenty years to erect and operate electric light works for generating and supplying electricity for lighting the town and for use as power. Under this grant the

said corporation constructed a costly and valuable plant and has been long operating the same, supplying the town and its people with electricity for purposes of illumination and power.  On the 12th of March, 1894, the Trader's Company was chartered by the State as a corporation to erect a hotel building with opera house, banking house and offices therein under which the said hotel building has been erected in Clarksburg.  On the 1st day of November 1894, the State incorporated a company called the Traders Annex Company with power to erect buildings, construct electric light plant to light its buildings and the town of Clarksburg with electricity.  The two last-named companies together erected an electric light plant, and have used the same for lighting the hotel, opera house, bank, and other apartments in the buildings erected by said companies.  Said two companies, having a surplus of electricity, engaged to supply private individually in the town.  These individuals erected poles in the streets to support wires for conveyance of electricity, by leave of the town council and the said two companies were about to obtain, or at least ask for, the authority from the council of Clarksburg to erect poles in the streets for the conveyance of electricity through the town for sale to its people, and thereupon the Clarksburg Electric Light Company sued out an injunction restraining the Traders Company and the Traders Annex Company and all other persons from applying to said council for the privileges aforesaid, and restraining the city council of Clarksburg from granting to the Traders Company and the Traders Annex Company, jointly or severally, the privilege of occupying the streets for the purpose of carrying on the business of furnishing electricity to the said city and its citizens.  The circuit court of Harrison County dissolved the injunction, and the electric light company appeals to this Court.

The electric light company claims that the grant to it by the council of Clarksburg of the privilege of furnishing electricity and occupying the streets of the city with its poles for the distribution of electricity to its consumers constitutes a contract giving that company the sole and exclusive right to furnish electricity within the city, and that the use of the streets by any other company, or even

persons, for furnishing electricity, is a violation of its rights, and that the grant by the said city to the Traders Company or the Traders Annex Company, as proposed, would be a violation and impairment of such contract, contrary to the Constitution of the United States. Upon this position—that the proposed grant or franchise to the Traders Company and Traders Annex Company would be a violation of the contract subsisting between the electric light company and the city, and a violation of the Constitution of the United States—the said electric light company stakes its case in this Court. The Federal Constitution (article 1, § 10) provides that "no state shall  *  *  *  pass any law impairing the obligation of contracts." It is beyond question that a grant by a municipal corporation, under authority of the statute of a state, to a private corporation to supply a city or town with electricity for the public use, or any similar franchise, constitutes a contract, when accepted and carried out by the corporation, which is under the protection of both the State and National constitutions. *New Orleans Gaslight Co.* v. *Louisiana Light and Heat Producing and Manufacturing Co.*, 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; *Louisville Gas Co.* v. *Citizens Gaslight Co.*, 115 U. S. 683, 6 Sup. Ct. 265, 29 L. Ed. 510. Therefore we do not question that the electric light company possesses a contract, and lawful vested rights under it; but to what extent? Has it the right to an exclusive franchise, effectually shutting out others from transacting a very important business, so needful to the public of the city of Clarksburg? Has that company the monopoly it claims? I shall not discuss the question whether an act of the legislature granting such an exclusive franchise would be valid, further than to say that under the great powers of a state legislature such an act would likely be valid under the cases just cited and others; but I can safely say that under multitudinous authorities the courts lean against construing statutes so as to grant, or to authorize municipal corporations to grant, such exclusive franchises. Such franchises constitute monopolies, which the law has through ages condemned, because they tie down and restrain and cripple the public right and interest, and sacrifice great public interests to the benefit and aggrandize-

ment of the few. Still, where such rights are valid and lawful, the courts must and do protect them. I state the proposition, as sustained by authorities in all quarters, that to authorize such exclusive franchise the statute must admit of no other reasonable construction. The ordinance of Clarksburg granting to the electric light company its franchise does, in terms, make it exclusive; but had the council power to insert in the franchise the clause or section granting such exclusive right? That is our question in this case; that is the pivot of this case. Turn to the statute law on the subject. The town of Clarksburg was incorporated by an act of Virginia of March 15, 1849, which gave its trustees power to "improve streets, walks, and alleys." An act of February 27, 1867, gave the town "control of all county roads, turn-pikes, and bridges within the limits thereof." The Virginia Code of 1860, applying to towns generally, gave the council "power to lay off streets, walks, or alleys, alter, improve, and light the same, and have them kept in good order." The Code of West Virginia of 1868, page 329 (Ed. 1891, page 426), the law in force when the franchise claim by the plaintiff was granted, and which applied to towns generally, provides that "the council of such city, town or village shall have power therein to lay off, vacate, close, open, alter, curb, pave and keep in good repair, roads, streets, alleys, * * * and to improve and light the same." No statute special to Clarksburg has been cited giving it power to confer such exclusive privilege. If the power to improve and light its streets does not authorize such exclusive franchise, it does not possess the power. If the general law governing cities and towns above quoted does not give Clarksburg's council power to grant such exclusive franchise, it does not possess the power. That the council, under the charter provisions and general statutes above quoted, does not possess the power to grant such exclusive franchise is settled by *Parkersburg Gas Co.* v. *Parkersburg*, 30 W. Va. 435, (4 S. E. 650). That case has been approved by the opinions since delivered in *Richards* v. *Clarksburg*, 30 W. Va. 496, (4 S. E. 774), and *Arbenz* v. *Railroad Co.*, 33 W. Va. 6, (10 S. E. 14,) 5 L. R. A. 371, and is thus the settled law of this State. That case holds that neither the char-

ter of Parkersburg, which was general, like that of Clarksburg, in this respect, nor the general statutes in relation to municipal corporations in force in 1864, which were the same as those quoted above, "conferred upon said city power to delegate to a private corporation the exclusive privilege of using the streets and alleys for laying gas pipes, and furnishing the city and its inhabitants with gas for thirty years. The grant by a city to a gas company of the exclusive privilege of lighting the city with gas does not deprive the city of the power to contract with an electric light company for lighting the city with electric lights." This denial of power in a municipal corporation merely under general statutes giving it control of streets and authority to light them is based on many decisions. 2 Dill. Mun. Corp. § 692; Elliott, Roads & S. 566; Boone, Corp. p. 35; *Grand Rapdids E. L. & P. Co.*, v. *Grand Rapids E. E. & F. G. Co.* (C. C.) 33 Fed. 659. This incapacity of Clarksburg to make such an exclusive grant results from the law generally prevalent that "a municipal corporation possesses and can exercise the following powers, and no others: First, those granted by express words in its charter, or the general statutes under which it is incorporated; second, those necessarily or fairly implied in or incident to the powers thus expressly granted; and third, those essential to the declared purposes of the corporation, not simply convenient, but indispensable." *City of Charleston* v. *Reed*, 27 W. Va. 281; *Christie* v. *Malden*, 23 W. Va. 667. Surely, we cannot say, contrary to the drift of all the law of the country, that the mere power to control streets and light the same carries with it by implication the enormous power to tie the hands of an important municipality for many years, or that such a power is indispensable or necessary to enable the municipality to carry out its legitimate functions. Therefore, the council of Clarksburg had no authority to grant this exclusive franchise, and that feature of its ordinance is *ultra vires*, and therefore void, confers no right, makes no contract, and the case falls under the principle, self-evident, stated in *New Orleans* v. *New Orleans Waterworks*, 142 U. S. 79, 12 Sup. Ct. 142, 35 L. Ed. 943, that, "before this court can be asked to determine whether a statute has impaired the

obligation of a contract, it must be made to appear that there was a legal contract subject to impairment.'' The electric light company has no contract good in law to be impaired, so as to call on either State or Federal Constitution for protection.

Counsel for the electric light company cite for its support the cases of *New Orleans Gaslight Co.* v. *Louisiana Light and Heat Producing and Manufacturing Co.*. 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516. and *Louisville Gas Co.* v. *Citizens Gaslight Co.* 115 U. S. 683, 6 Sup. Ct. 265, 29 L. Ed. 510, but they do not apply, because in those cases the legislature, under its plenary power, had granted the exclusive franchise. As I said above, under the authority of those two cases, and I should add the *Slaughter-House Cases*, 16 Wall. 36, 21 L. Ed. 394; *New Orleans Waterworks, Co.* v. *Rivers*, 115 U. S. 674, 6 Sup. Ct. 273 29 L., Ed. 525, and *St. Tammany Waterworks Co.* v. *New Orleans Waterworks*, 120 U. S. 64, 7 Sup. Ct. 405, 30 L. Ed. 563, I do not question the power, though I should question the policy, in a legislature to grant such an exclusive privilege; but those cases cannot help the plaintiff, because they involve legislative grants, whereas the plaintiff in this case can appeal to no such legislative grant, but only to a council grant, warranted by no legislative authority conferred upon that council, and not justified by the special legislation relative to Clarksburg, or the general law. I should confirm the position just stated by a reference to the case of *City of Walla Walla* v. *Walla Walla Water Co.*, 172 U. S. 1, 19 Sup. Ct. 7, 43 L. Ed. 341, where the court asserts that, to make a grant of a franchise to furnish water to a city made by its council such a contract as is protected by the United States Constituton, the council must have authority to make such grant, So the decision of this Court in *Parkersburg Gas Co.* v. *Parkersburg*, is well fortified by decisions elsewhere. But suppose it were not so fortified. It would be the law governing this Court, and would show that the electric light company cannot appeal to the National Constitution to protect its exclusive grant. Whether that company has or has not a valid contract depends on State law exclusively. It depends on the question whether that clause in the ordinance of the council of Clarksburg

is warranted by the statute of the State relating to Clarks-
burg as a municipal corporation.   Clarksburg is a munici-
pal corporation in the State of West Virginia, and its rights
are governed by and originate from State law.   So with
the other companies.    Whether that exclusive grant
makes a valid contract is to be tested by decisions of
the State Supreme Court.   The right depends on the con-
struction of State statutes as to the power of the council in
the matter. As long ago as *Ogden* v. *Saunders*, 12 Wheat.
259, 6 L. Ed. 606, the supreme court said: "It is the munici-
pal law of the state, whether that be written or unwrit-
ten, which is emphatically the law of the  contract made
within the state, and must govern it throughout, wherever
its performance is sought to be enforced."   The decision
of the state court of last resort upon rights dependent
alone upon its laws, its statutes, is conclusive upon the
Federal judiciary.   In *Louisville N. O. & T. Ry. Co.* v.
*Mississippi*, 133 U. S. 587, 10 Sup. Ct. 348, 33 L. Ed. 784, it
was held that "the construction of a State  statute by the
highest court of the State is accepted as conclusive in  this
Court." In *Detroit* v. *Osborne*, 135 U. S. 492, 10 Sup  Ct.
1012, 34 L. Ed. 260, the supreme court, nnding  that  the
supreme court of Michigan had held that under a  statute
of that state there was no right of action  to a  person in-
jured by reason of a defect in a sidewalk, caused by neg-
lect of the city, although the Supreme Court of the United
States differed with the Michigan court, and also said that
the current of authorities differed  from that court, yet
followed the state decision.   Justice Brewer  said:   "But,
even if it were a fact that the universal voice of the  other
authorities was against the doctrine announced by the su-
preme court of Michigan, the fact remains that the  deci-
sion of that court, undisturbed by legislative action, is the
law of that state.   Whatever our views may be as to the
reasoning or  conclusion of that  court is  immaterial.   It
does not change the fact that its decision is the law of the
state of Michigan, binding upon all its courts, all  its citi-
zens, and all others who may come within the limits of the
state.   The question presented by it is not one of
general commercial law; it is  purely  local in its  sig-
nificance and extent.  It involves simply a consideration

of the powers and liabilities granted and imposed by legislative action upon cities within the State. While this court has been strenuous to uphold the supremacy of Federal law, and the interpretation placed upon it by the Federal Courts, it has been equally strenuous to uphold the decisions by state courts of questions of purely local law. There should be, in all matters of a local nature, but one law within the state; and that law is not what this court might determine, but what the supreme court of the state has determined." Again and again has the United States Supreme Court announced this doctrine. *Morely* v. *Railway Co.*, 146 U. S. 162, 13 Sup. Ct. 54, 36 L. Ed. 925; *Irrigation Dist.* v. *Bradley*, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; *First Nat. Bank of Aberdeen* v. *Chehalis Co.* 166 U. S. 440, 17 Sup. Ct. 629, 41. L. Ed. 1069; *Marchant* v. *Pennsylvania R. Co.*, 153 U. S. 380, 14 Sup. Ct. 894, 38 L. Ed. 751; *Wade* v. *Travis Co.*, Tex., 174 U. S. 508, 19 Sup. Ct. 715, 43 L. Ed. 1060. In *Railroad Co.* v. *McClure*, 10 Wall. 511, 19 L. Ed. 997, it is held that there is no jurisdiction in the supreme court, under section 25 of the judiciary act, to review a decision of the highest court of a State maintaining the validity of a law alleged to impair a contract, "when the law set up as having this effect was in existence when the alleged contract was made, and the highest state court has only decided that there was no contract in the case." Just so in the present case. The statutes testing the right of the electric company were in force when its franchise was granted, and the decision in *Parkersburg Gas Co.* v. *Parkersburg*, holding that under those statutes such exclusive grant could not be made, had been rendered. Now, if the decision of the State Supreme Court upon a State statute and rights dependent upon it are not conclusive, even upon the Federal Supreme Court, the State is a nonentity, a myth. No political party since the birth of the Federal Constitution, not even the most ultra centralizationists, so called, have ever made any such contention.

The case of *City R. Co.* v. *Citizens' St. R. Co.*, 166 U. S. 557, 17 Sup. Ct. 653, 41 L. Ed. 1114, is invoked in favor of the plaintiff. It holds that an exclusive privilege to a street-railway company to occupy streets for thirty years

constituted a contract which could not be impaired by a grant from the city to another company to exercise the same privilege of carrying on the like business in the same streets. But that case cannot help the plaintiff. That was a valid contract, because the city had authority to grant the exclusive franchise under state statutes, as had been held by the supreme court of the state. That made the franchise valid, as if it had been granted by the legislature itself, as in the case of *New Orleans Gaslight Co.* v. *Louisiana Light and Heat Producing & Manufacturing Co.* 115 U. S. 650. 6 Sup. Ct. 252, 29 L. Ed. 516, and other cases cited above. That this is so is made clear in the opinion by Justice Brown, saying: "That the complainant had a contract with the city is entirely clear. It was so held by the supreme court of Indiana in *Western Paving and Supply Co.* v. *Citizens' St. R. Co.*, 128 Ind. 525, 26 N. E. 188, 28 N. E. 88, 10 L. R. A. 770." The supreme court simply followed the rule stated above that the decision of the state court as to whether there is or is not a contract valid under state law is final. There the railroad company had a valid franchise conferred by state law, as construed by the state court; whereas in this case the electric light company had no valid exclusive right under the West Virginia statute law as construed in *Parkersburg Gas Co.* v. *Parkersburg.* The difference between the two cases is plain and wide. In the one case a valid contract; in the other no contract. Counsel for the electric company cites the case of *Citizens' Sav. Bank of Owensboro* v. *City of Owensboro*, 173 U. S. 636, 19 Sup. Ct. 530, 43 L. Ed. 840. I am unable to see that the case contains anything bearing upon this case.

As to the argument that upon the faith of such exclusive grant the electric company has spent much money, I have only to reply, that can have only a moral, not a legal, effect, and that the company was bound to know the law, and look out for its rights, under the principle that "persons dealing with a corporation must take notice of what is contained in the law of its organization, and must be presumed to be informed of the restrictions annexed to the grant of power by the law by which the corporation is authorized to act." *Smith* v. *Cornelius*, 41 W. Va. 59, (23 S.

E. 599), 30 L. R. A. 747; *McCormick* v. *Bank*, 165 U. S. 549, 550, 17 Sup. Ct. 433, 41 L. Ed. 817; Clark Corp. 174.

As to the claim that Clarksburg has ratified and confirmed this void exclusive feature in the franchise of the electric company by buying from it electricity to light the streets: This is strange doctrine. A void contract cannot be so ratified by mere implication. If the council was without power to expressly grant such exclusive right, it is illogical to say that it can confirm and make it good *abinitio* by mere implication from its dealing with it. Of course, the entire grant is not void, but only the exclusive clause; and the mere purchase by the city from the company of electricity would not ratify the void clause anyhow, because it could purchase under the general power of the company, without reference to that void clause. Ratification and acquiescence cannot be invoked to legalize contracts of a municipality made by its officers in excess of authority, even though the contract has been performed by one of its parties. 2 Mor. Priv. Corp. §§ 621, 718.

The defendant corporations raise the point against the plaintiff corporation that it had no charter existence on the day of the grant to it of the franchise in question, and that, not being in *esse* then, the grant did not vest, but was abortive, like the case of a grant of land to a grantee not in being. I do not think the point tenable. I think the Clarksburg Electric Light Company is vested with a valid franchise, except as to the exclusive feature. In *Spring Garden Bank* v. *Hurlings Lumber Co* , 32 W. Va. 357 (9 S. E. 243), 3 L. R. A. 583, it was held that after corporators had signed an agreement preliminary to a certificate of incorporation, and before it had issued, a deed for land to such corporation, delivered in escrow, to be delivered when the corporation should obtain its charter and organize, and it was so delivered after the charter obtained and organization, the deed was good to convey the land. In this case the agreement had not been signed for the formation of the corporation at the date of the town ordinance, and yet I think that ordinance valid. We must not apply the strict rule applicable to deeds of land to the present case. Deeds require actual delivery to a grantee,

but such an ordinance as this requires no delivery, only acceptance, and it was accepted by the corporation when it came into legal being. That is enough. I have no doubt that a deed for land made to a corporation named before incorporation, and so dated, but delivered after incorporation, would be good. The date of delivery and acceptance can be shown. It is never a deed until acceptance. *Guggenheimer* v. *Lockridge*, 39 W. Va. 457 (19 S. E. 874); 5 Thomp. Corp. § 5802. The latter authority says that "a deed of conveyance of land to an intended corporation before its organization will take effect upon the event of its organization; for its acceptance of the deed, when it becomes capable of accepting, will be presumed." Much more so in this case, where certain persons intending to form a corporation solicit and are tendered such a franchise as this, and they proceed to become incorporated. It was intended to operate only in the event of incorporation, and when it should take place. No delivery was necessary. Acceptance is all-sufficient to put the ordinance into operation. Then it took effect; not till then. *Richardson* v. *Graham*, 45 W. Va. 134 (30 S. E. 92). Our conclusion is to affirm the decree.

*Affirmed.*